IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NELSON T. MOLISEE,<br>      Plaintiff, | )<br>)<br>) |
| vs | )   Civil Action No. 11-1056 |
| SECURITAS SECURITY SERVICES,<br>USA, INC.,<br>      Defendant. | )<br>)<br>)<br>) |

MEMORANDUM OPINION AND ORDER

MITCHELL, Magistrate Judge:

Presently before the Court is a motion to dismiss the amended complaint submitted by the defendant, Securitas Security Services, USA, Inc. ("Securitas"). For reasons discussed below, Securitas' motion to dismiss (Document No. 10) will be granted as to Counts II and III and as to the plaintiff's claim of age discrimination in Count IV, and denied in all other respects.

In this alleged employment discrimination case, the plaintiff, Nelson T. Molisee, has filed a four-count amended complaint against Securitas, his former employer. In Count I, the plaintiff complains that Securitas unlawfully terminated his employment on the basis of his disability or perceived disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, et seq. In Count II, the defendant is said to have unlawfully terminated the plaintiff's employment on the basis of his age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq. In Count III, the plaintiff contends that he was subjected to a hostile work environment by his supervisor during his employment at Securitas. In Count IV, Securitas is said to have discriminated against the plaintiff on the basis of his age and disability in violation of the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 et seq. The

Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1367.

In the amended complaint, the plaintiff contends that Securitas, a security service company, hired him in 2007 as a Field Supervisor, which required him to service its clients, and train, mentor, and discipline its security officers; that during his tenure as a Field Supervisor, he was forced to work excessive hours, sometimes 75-100 hours per week to serve the needs of clients; that as a result of being overworked, he developed a serious medical condition, including heart problems, diabetes and severe chronic obstructive pulmonary disease ("COPD"), which was known by Securitas; that due to his heart problem and diabetes, he missed work for four to five weeks; that when he returned to work, he was called into Vice President John Dixon's office, and Dixon told him he would be fired if he continued to talk to Sales Manager John Scanlon; and that Vice President Dixon frequently belittled, berated and created a hostile work environment for the plaintiff.

The plaintiff asserts that approximately three months prior to his termination, Vice President Dixon received a client complaint unrelated to the plaintiff; that Dixon then met with Branch Managers Jeff Werner and Melissa Glaze to discuss why Securitas' Field Supervisors, including the plaintiff, were not handling client complaints; that at that meeting, Dixon is said to have indicated that the plaintiff had a heart problem and an eighth grade education and stated "What's he going to do for you?"; and that Dixon told Branch Managers Werner and Glaze to meet with the Field Supervisors and direct them to confront problems involving security officers rather than avoid them, which Werner and Glaze did.

The plaintiff further alleges that after the Field Supervisors were instructed to deal with problems involving security officers, Branch Manager Glaze received a complaint from a hotel client regarding a security officer who was acting in dereliction of his duties; that Glaze told the

plaintiff to meet with the client and determine if the security officer was acting properly; that the plaintiff found that the security officer was acting improperly, and he informed the officer he would re-inspect him in one week; and that upon re-inspection, the officer was again found to be in dereliction of his duties, whereupon the plaintiff was instructed to call a replacement officer and report the incident to Vice President Dixon.

The plaintiff contends that when the derelict security officer was replaced by another officer, he called the employee complaint line and asserted he was removed because of his race; that Securitas investigated the incident, after which Branch Manager Werner was informed that the plaintiff was going to be discharged; that Werner objected to the plaintiff's discharge, as he was not interviewed during the investigation and felt that the plaintiff had followed company procedures; and that nonetheless, the plaintiff's employment was terminated.

The plaintiff avers that on or about June 30, 2010, following his discharge, he filed an Intake Questionnaire with the Equal Employment Opportunity Commission ("EEOC"), asserting claims of age discrimination, disability discrimination and retaliation; that on or about May 19, 2011, the EEOC issued him a "right to sue" letter in connection with his claims; and that he has complied with all procedural requirements for initiating this suit.

On August 15, 2011, the plaintiff commenced this action by filing a complaint against the defendant. On October 4, 2011, the plaintiff filed his amended complaint, alleging that Securitas discriminated against him in violation of the ADA, the ADEA, and the PHRA, and subjected him to a hostile work environment.

In response to the amended complaint, Securitas has moved to dismiss it in its entirety for failure to state a claim pursuant to F.R.Civ.P. 12(b)(6). We agree that the plaintiff's pleadings are deficient as to his ADEA claim in Count II, hostile work environment claim in Count III, and

age discrimination claim under the PHRA in Count IV.

In reviewing a Rule 12(b)(6) motion to dismiss, the Court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." Fowler v. UPMC, 578 F.3d 203, 210-11 (3d Cir. 2009), citing Ashcroft v. Iqbal, – U.S. – , 129 S.Ct. 1937, 1949 (2009). The court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Fowler, 578 F.3d at 211, quoting Iqbal, 129 S.Ct. at 1950. To be "plausible', a claimant's factual allegations must "permit the court to infer more than the mere possibility of misconduct." Id. That is, "a complaint must do more than allege the plaintiff's entitlement to relief"; it "has to 'show' such an entitlement with its facts." Fowler, 578 F.3d at 211. A pleading that only proffers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

ADA claim in Count I:

Count I of the amended complaint purports to state a claim for disability discrimination under the ADA. To state a claim under the ADA, the plaintiff must allege that he: (1) has a "disability" within the meaning of the ADA, (2) is otherwise qualified to perform the essential functions of the job, and (3) has suffered an adverse employment decision because of his disability. Williams v. Phila. Housing Auth.Police Dept., 380 F.3d 751,761 (3d Cir. 2004).

Securitas argues that the plaintiff has not established the first or third prong of his prima facie case, as his pleadings do not reflect that he has a "disability" as defined by the ADA, or that he was terminated because of his disability. We disagree.

Under the ADA, the term "disability" means, with respect to an individual--

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

> (B) a record of such impairment; or
> (C) being regarded as having such impairment.

42 U.S.C. § 12102(2).

The plaintiff bases his claim of a disability on subsections (A) and (C) above, alleging that he "developed a serious medical condition including heart problems, diabetes and severe COPD, all of which his employer knew about" (Amended Complaint at ¶17) "which ultimately led to [his] termination". (Id. at ¶19). The plaintiff also alleges that he "suffered from a physical or mental impairment that limited one or more of his life activities" (Id. at ¶ 38), and that he "was regarded by Defendant as having an impairment" (Id. at ¶ 40).

Merely having an impairment, or being diagnosed with an impairment does not make one disabled for purposes of the ADA. Bialko v. Quaker Oats Co., 434 Fed. Appx. 139, 142 (3d Cir. 2011), citing Toyota Motor Mfg. v. Williams, 534 U.S. 184, 195 (2002), *superceded on other grounds by* Pub.L.No. 110-325, §3406, 122 Stat.3553 (2008). Rather, to qualify as disabled, a claimant must demonstrate that the impairment substantially limits one or more "major life activities". Id. "Major life activities" include, but are not limited to: caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, interacting with others and working. 29 C.F.R. § 1630.2(i) (2011).

In moving to dismiss the ADA claim in Count I, Securitas asserts that the plaintiff failed to identify a major life activity that was purportedly limited by his impairment. However, it is alleged in the amended complaint that the plaintiff "suffered from a physical or mental impairment that limited one (1) or more of his life activities"; that "he was being treated by a cardiologist and has severe COPD"; and that he "complained to his Superior, Mr. Dixon, that he was unable to perform all required work and was hospitalized for five (5) weeks shortly before

his termination for a heart-related condition." (Amended Complaint at ¶¶ 38-39). Accepting these allegations as true, the plaintiff's inability to perform all required work and his hospitalization for a heart-related condition plausibly indicates that he might be substantially limited in the major life activity of working.

Importantly, the Third Circuit Court of Appeals has instructed that "[a plaintiff] is not required, at this early pleading stage, to go into particulars about the life activity affected by h[is] alleged disability or detail the nature of h[is] substantial limitations." Fowler, supra, 578 F.3d at 213.  Rather, "[a]t this stage of the litigation, [a] District Court should … focus[ ] on the appropriate threshold question – namely, whether [the plaintiff] *pleaded* [ ]he is an individual with a disability." Id. (emphasis in original).  As explained in Fowler, at this juncture, it is sufficient if a complaint identifies an impairment, of which the employer was aware, and alleges that such impairment constitutes a disability under the statute.  Fowler, 578 F.3d at 213.  This the plaintiff has pled. (See, Amended Complaint at ¶¶ 17, 19, 23, 37-39).  Accord, Slade v. Hershey Co., 2009 WL 4794067, *4 (M.D.Pa., Dec. 8, 2009) (at the pleading stage, "a plaintiff is not required 'to go into particulars about the life activity affected by h[is] alleged disability'… Rather, a complaint must identify an impairment and allege that such impairment constitutes a disability under the ADA."), quoting Fowler, 578 F.3d at 213.[1]  Based on the foregoing, we find that the plaintiff has stated a plausible claim of disability discrimination related to an alleged impairment that limited one of his major life activities.

Conversely, the plaintiff has not adequately pled that Securitas regarded him as having an impairment.  A person is "regarded as" having an impairment if he:

---

[1] Needless to say, a plaintiff "must ultimately prove that [he] is substantially limited in a recognized major life activity to prevail on h[is] claim." Fowler, 578 F.3d at 214.  Although Fowler involved a claim under the Rehabilitation Act, 29 U.S.C. § 794, et seq., while Slade, supra, pertained to an ADA claim, "the protections found in the ADA and in the Rehabilitation Act are interpreted similarly". Doe v. County of Centre, PA, 242 F.3d 437, 446 (3d Cir. 2001).

6

> (1) Has a physical or mental impairment that does not
> substantially limit major life activities but is treated by
> the covered entity as constituting such limitation;
> (2) Has a physical or mental impairment that substantially
> limits major life activities only as a result of the attitudes
> of others toward such impairment; or
> (3) Has [no such impairment] but is treated by a covered
> entity as having a substantially limiting impairment.

Rinehimer v. Cemcolift, Inc., 292 F.3d 375, 381 (3d Cir. 2002).

The United States Supreme Court has stated: "[t]here are two apparent ways in which individuals may fall within [clause (C)'s 'regarded as' definition of a disability]:

> (1) a covered entity mistakenly believes that a person has
> a physical impairment that substantially limits one or more
> major life activities, or (2) a covered entity mistakenly believes
> that an actual, nonlimiting impairment substantially limits one
> or more major life activities.  In both cases, it is necessary that
> a covered entity entertain misperceptions about the individual –
> it must believe either that one has a substantially limiting
> impairment that one does not have or that one has a substantially
> limiting impairment when, in fact, the impairment is not so
> limiting.

Sutton v. United Airlines, 527 U.S. 471, 489 (1999).

Here, the plaintiff does not allege that Securitas terminated his employment because it erroneously believed his medical condition substantially limited a major life activity when it did not, or because it mistakenly believed he had a substantially limiting impairment when the impairment was not so limiting.  Instead, the plaintiff merely alleges -- without supporting facts, that he "was regarded by Defendant as having an impairment which formed [a] bases for his termination." (Amended Complaint at ¶ 40).

As discussed above, a pleading that only offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" -- as here -- "will not do." Twombly, supra, 550 U.S. at 555.  Hence, the plaintiff has not stated a claim of "regarded as" discrimination.

7

Nonetheless, for reasons discussed above, and as the plaintiff asserts he was discharged because of his disability (Amended Complaint at ¶¶ 19, 39, 41), Securitas' motion to dismiss Count I will be denied.

ADEA claim in Count II:

In Count II, the plaintiff contends that Securitas violated the ADEA by terminating his employment due to his age, which is over 40. Under the ADEA, an employer is prohibited from discharging any individual or otherwise discriminating against any individual "*because of such individual's age*." 29 U.S.C. § 623(a)(1) (emphasis added).

The United States Supreme Court has stated that "the ordinary meaning of the ADEA's requirement that an employer took adverse action 'because of' age is that age was the 'reason' that the employer decided to act." Gross v. FBL Financial Services., Inc., 129 S.Ct. 2343, 2350 (2009), citing Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993). In Gross, the Court stated that "the ADEA's text does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor". 129 S.Ct. at 2349. Rather, to establish a claim under the ADEA, "a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision." Id. at 2350.

To plead a claim of discriminatory discharge under the ADEA, a plaintiff must allege that: (1) he was over 40 years of age; (2) the defendant took an adverse employment action against him; (3) he was qualified for the position which he held; and (4) he was replaced by a person sufficiently younger to support an inference of discriminatory animus. Smith v. City of Allentown, 589 F.3d 684, 689 (3d Cir. 2009). Here, the plaintiff has not pled facts to satisfy the fourth element above.

Courts hold that to satisfy the fourth element of a discriminatory discharge claim, a

plaintiff must plead facts showing that a defendant "replaced him with someone younger." Prisco v. Methodist Hospital, 2011 WL 1288678, *3 (E.D.Pa., Apr. 4, 2011), citing Pina v. Henckel Corp., 2008 WL 819901, *4 (E.D.Pa., Mar. 26, 2008), and Grove v. Admiral Peary Area Vocational-Technical Sch., 221 Fed. Appx. 101, 104 (3d Cir. 2007) (finding that plaintiff failed to prove the fourth element of a prima facie case of discriminatory termination when the employer never filled the position from which plaintiff was terminated).  Also see, Pezzoli v. Allegheny Ludlum Corp., 2010 WL 2852988, *2 (W.D.Pa., July 20, 2010) (dismissing an ADEA claim because: "Not only does [plaintiff] fail to allege any non-speculative, non-conclusory facts that might support an inference of age discrimination as a 'but-for' cause, he also fails to assert that [his employer] ultimately filled the position with someone sufficiently younger than him [to] permit an inference of age discrimination.").

     Here, the plaintiff has failed to state a viable ADEA claim.  Other than alleging that he was over the age of 40 (Amended Complaint at ¶ 5) and terminated due to his age (Id. at ¶ 50), the plaintiff fails to plead facts to support an inference that age was the reason for his discharge. Indeed, the amended complaint is devoid of non-conclusory facts linking the plaintiff's age to his termination; certainly, the plaintiff does not claim that Securitas filled his position with someone sufficiently younger to permit an inference of discrimination.  Thus, Count II will be dismissed.

<u>Hostile Work Environment claim in Count III:</u>

     In Count III, the plaintiff complains that Securitas subjected him to a hostile work environment, as John Dixon, his supervisor, frequently belittled, berated and demeaned him. To establish a prima facie hostile work environment claim, the plaintiff must show: (1) he suffered intentional discrimination because of his membership in a protected class; (2) the discrimination was severe or pervasive; (3) he was detrimentally affected by the discrimination;

(4) the discrimination would detrimentally affect a reasonable person in his position; and (5) respondeat superior liability exists.  <u>Mayo v. Mercy Philadelphia Hosp.</u>, 2011 WL 1045101, *2 (E.D.Pa., Mar. 22, 2011), citing <u>Cardenas v. Massey</u>, 269 F.3d 251, 260 (3d Cir. 2001).

To establish the second element of a hostile work environment claim, a plaintiff must allege that "his workplace 'was permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  <u>Brooks v. CBS Radio</u>, 342 Fed. Appx. 771 776 (3d Cir. 2009) (quoting <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 116 (2002)).  In determining if a work environment is sufficiently severe or pervasive to give rise to a cause of action, courts consider several factors, "including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'".  <u>Brooks</u>, <u>supra</u>, 342 Fed. Appx. at 777 (quoting <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 23 (1993)).

In this regard, "[c]onduct that is 'merely offensive,' or which has the effect of making the employee's life at work merely unpleasant or uncomfortable is, without more, not actionable." <u>Smith v. Giant Eagle, Inc.</u>, 2011 WL 1706520, *3 (W.D.Pa., May 4, 2011), citing <u>Harris</u>, <u>supra</u>, 510 U.S. at 21.  Indeed, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." <u>Mayo</u>, <u>supra</u>, 2011 WL 1045101, at *2 (quotation omitted).

Here, the plaintiff has not alleged facts showing that he suffered severe or pervasive discrimination.  The crux of the plaintiff's allegations of harassment are these:

- Vice-President Dixon frequently belittled, berated and otherwise created a hostile work environment for him;
- after being off work for several weeks due to a heart problem and diabetes,

> the plaintiff was told by Vice-President Dixon that he would be fired if he continued to talk to Sales Manager John Scanlon;
> 
> - Vice-President Dixon also threatened to terminate the plaintiff for no valid reason;
> 
> - in a meeting with Branch Managers Werner and Glaze, Dixon made a comment which indicated that the plaintiff had a heart problem and an eighth grade education and stated: "What's he going to do for you?"; and
> 
> - the plaintiff's Branch Manager indicated that the plaintiff was subjected to a hostile work environment.

(Amended Complaint at ¶¶ 20, 23, 32).

The plaintiff's above claims that Vice President Dixon frequently belittled, berated and created a hostile work environment for him, and that his Branch Manager indicated he was subjected to a hostile work environment are conclusory. Dixon's other alleged threats to discharge the plaintiff, and his isolated comment to the Branch Managers are not so pervasive, severe, or intimidating that they rise to the level of an abusive work environment. As previously mentioned, complained-of conduct which is "merely offensive", or which has the effect of making an employee's time at work "unpleasant or uncomfortable", as here, is not actionable. Giant Eagle, supra, 2011 WL 1706520, at 3. Indeed, offhand comments and isolated incidents which are not extremely serious do not amount to discriminatory changes in the terms and conditions of employment. Mayo, 2011 WL 1045101, at *2. Here, since the plaintiff has not shown that his workplace "was permeated with discriminatory intimidation" that interfered with his work performance, Brooks, 342 Fed. Appx. at 776-77, Count III will be dismissed.

PHRA claims in Count IV:

In Count IV, the plaintiff contends that Securitas violated the PHRA when it terminated his employment on the basis of his disability and his age. Generally, courts analyze claims

11

brought under the PHRA in accordance with their federal counterparts. Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996) (finding that the "district court properly treated [plaintiff's] PHRA claims as coextensive with his ADA and ADEA claims"). That is because "[t]he same legal standard that applies to the ADA applies equally to disability discrimination claims under the PHRA." Colwell v. Rite Aid Corp., 602 F.3d 495, 500, n.3 (3d Cir. 2010) (citation omitted). "It is similarly 'proper to address [ADEA and PHRA age discrimination claims] collectively.'" Id. (quoting Kautz v. Met-Pro Corp. 412 F.3d 463, 466 n.1 (3d Cir. 2005).

Having found that the plaintiff stated a plausible claim of disability discrimination under the ADA, his related claim of disability discrimination under the PHRA will survive the motion to dismiss. However, as the plaintiff failed to state a viable claim of age discrimination under the ADEA, his related claim of age discrimination under the PHRA will be dismissed.

An appropriate Order will be entered.

<u>O R D E R</u>

AND NOW, this 4th day of January, 2012, for the reasons set forth in the Court's Memorandum Opinion filed this date,

IT IS ORDERED that the defendant's motion to dismiss the amended complaint (Document No. 10) is granted as to Counts II and III and as to the plaintiff's claim of age discrimination in Count IV, and denied in all other respects.

<u>s/ROBERT C. MITCHELL</u>
United States Magistrate Judge
